IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICK KELLER and NITISH LAL, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 21-cv-3389 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| NORTHSTAR LOCATION SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Patrick Keller and Nitish Lal brought this lawsuit under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692c(b), against defendant collection agency Northstar Location Services ("Northstar") in the Circuit Court of Cook County, Chancery Division, after which Northstar removed this lawsuit to federal court. Before the Court is plaintiffs' motion to remand under 28 U.S.C. § 1447(c) based on the Court's lack of subject matter jurisdiction, specifically Article III standing. For the following reasons, the Court denies plaintiffs' motion.

**Background**

In their complaint, plaintiffs allege that Northstar used a third-party letter vendor to prepare their collection letters. Plaintiffs assert that to have the letter vendor send letters, Northstar provided the vendors with their names and addresses, their status as debtors, their alleged debts, and other personal information. By doing so, plaintiffs maintain that Northstar violated § 1692c(b) when it disclosed information about their debt to the employees of the unauthorized third-party vendors. In bringing this claim, plaintiffs seek statutory damages, attorney's fees and costs, and such other and further relief as the Court deems proper. They do not seek actual damages.

**Discussion**

In their motion to remand, plaintiffs argue that the Court does not have subject matter

jurisdiction over his lawsuit based on the lack of Article III standing. As the proponent of subject matter jurisdiction, to establish Article III standing Northstar must show: (1) plaintiffs suffered an actual or imminent, concrete and particularized injury-in-fact; (2) a causal connection between the injury and the challenged conduct; and (3) the likelihood the injury will be redressed by a favorable decision. *Prairie Rivers Network v. Dynegy Midwest Generation, LLC,* 2 F.4th 1002, 1007 (7th Cir. 2021). The parties focus on the injury-in-fact component, which requires that the harm be "concrete and particularized" and "actual or imminent." *Prosser v. Becerra*, 2 F.4th 708, 713 (7th Cir. 2021). As for the consumer protection statutes, "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." *TransUnion LLC v. Ramirez,* 141 S.Ct. 2190, 2205 (2021).

Here, plaintiffs argue that based on a series of recent Seventh Circuit cases regarding Article III standing in the context of FDCPA claims, Northstar cannot establish that they suffered a concrete harm, therefore, this lawsuit belongs in state court. *See Protect Our Parks, Inc. v. Chicago Park Dist.*, 971 F.3d 722, 731 (7th Cir. 2020) ("Article III does not apply to the states, so 'state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability.'") (citation omitted). The precise question at issue is whether plaintiffs have alleged an intangible injury that is concrete under their mailing vendor theory of liability. *Smith v. GC Services Limited P'ship*, 986 F.3d 708, 711 (7th Cir. 2021) ("Standing often depends on what theory a plaintiff advances and how injury would be proved."). The Seventh Circuit cases plaintiffs cite do not discuss the relevant statute § 1692c(b) nor has the Seventh Circuit addressed their mailing vendor theory. Nevertheless, the Seventh Circuit recently stated that "an FDCPA violation might cause harm if it leads a plaintiff to pay extra money, affects a plaintiff's credit, or otherwise alters a

2

plaintiff's response to a debt." *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 780 (7th Cir. 2021). There are no such allegations in plaintiffs' complaint.

The Court thus turns to Northstar's argument that plaintiffs have alleged an intangible, yet concrete harm because their allegations reflect that they suffered an invasion of their privacy. To address this argument, the Court looks to both history and the judgment of Congress. *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)). The historical inquiry asks, "whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms." *TransUnion*, 141 S.Ct. at 2200. As the *TransUnion* Court clarified, "[v]arious intangible harms can also be concrete" including "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.* at 2204. Under Congress's judgment, "[c]ourts must afford due respect to Congress's decision to impose a statutory prohibition or obligation on a defendant, and to grant a plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or obligation." *Id.*

With this standard in mind, the Court turns to an Eleventh Circuit opinion where that court concluded violations of § 1692c(b) have a close relationship to the harm resulting from the common law tort of invasion of privacy, specifically the public disclosure of private facts. *Hunstein v. Preferred Collection & Mgmt. Serv., Inc.*, 994 F.3d 1341, 1347 (11th Cir. 2021); *see also United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) ("[B]oth the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person."). The *Hunstein* decision also concluded that invasion of privacy is one of the harms against which the FDCPA is directed. *Id.*; *see also* 15 U.S.C. § 1692(a) ("There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of

personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy."); S.REP. 95-382, at 4, reprinted in 1977 U.S.C.C.A.N. 1695, 1699 ("Other than to obtain location information, a debt collector may not contact third persons such as a consumer's friends, neighbors, relatives, or employer. Such contacts are not legitimate collection practices and result in serious invasions of privacy, as well as the loss of jobs."). The *Hunstein* decision thus held that a violation of § 1692c(b) gives rise to a concrete injury-in-fact for Article III standing and that a debt collector's transmittal of a consumer's personal information to a third-party vendor constitutes a communication "in connection with the collection of any debt" under § 1692c(b). *Id.* at 1348-49.

The Eleventh Circuit's reasoning finds support in the Supreme Court's recent *TransUnion* decision where the Court recognized that various intangible harms can be concrete for purposes of Article III standing, such as reputational harms, disclosure of private information, and intrusion upon seclusion. *Id.* at 2204. *Hunstein* is also supported by the Seventh Circuit's decision in *Gadelhak*, in which the court concluded that that common law has long recognized actions against defendants who invade privacy rights, in that case, intrusion upon seclusion. *Id.* at 462. Other Seventh Circuit precedent confirms that plaintiffs have asserted a concrete harm in the context of the invasion of privacy rights. *See Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1149 (7th Cir. 2020) ("The invasion of a legally protected privacy right, though intangible, is personal and real, not general and abstract.").

Accordingly, the Court concludes that because plaintiffs have alleged concrete, albeit intangible harms resulting from Northstar's actions, there is Article III standing for this case to remain in federal court.[1] The Court therefore denies plaintiffs' motion.

---

[1] Plaintiffs did not address Northstar's arguments that they had Article III standing based on an intangible, yet concrete harm in relation to the invasion of their privacy.

**Conclusion**

Based on the foregoing, the Court denies plaintiffs' motion to remand [11].

**IT IS SO ORDERED.**

Date: 8/20/2021

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge